| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**GENOVA BURNS LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Phone: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Counsel to Affiliated Physicians and Employers Master Trust*<br>**DANIEL M. STOLZ, ESQ.**<br>**DONALD W. CLARKE, ESQ.** | |
| In Re:<br><br>**AFFILIATED PHYSICIANS AND EMPLOYERS MASTER TRUST d/b/a MEMBER HEALTH PLAN NJ**<br><br>                          Debtor. | Chapter 11<br><br>Hon. Michael B. Kaplan<br><br>Case No.: 21-14286-MBK |

**APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ASSUME THE MASTER SERVICES AGREEMENT WITH AETNA LIFE INSURANCE COMPANY AND AUTHORIZING THE DEBTOR TO FUND AETNA'S PREPETITION AND POSTPETITION FUNDING REQUESTS ON ACCOUNT OF THE DEBTOR'S SELF-INSURED MEDICAL AND PRESCRIPTION CLAIM OBLIGATIONS INCURRED PRE AND POSTPETITION**

**TO:    THE HONORABLE MICHAEL B. KAPLAN**
**         UNITED STATES BANKRUPTCY JUDGE**

The Affiliated Physicians and Employers Master Trust d/b/a Member Health Plan NJ, the debtor and debtor-in-possession (the "Debtor" or "APEMT") in the above captioned Chapter 11 case (the "Case"), hereby files this motion (the "Motion") to authorize the Debtor to assume the Master Services Agreement with Aetna Life Insurance Company ("Aetna") and fund Aetna's prepetition and postpetition funding requests on account of the Debtor's self-insured medical and prescription claim obligations incurred pre and postpetition.  In support of the Motion, the Debtor respectfully represents as follows:

1. On May 24, 2021, the Debtor filed a voluntary chapter 11 petition (the "Petition Date") for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. The Debtor continues to manage and operate its businesses as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. A complete description of the background of the Debtor, its business operations and the events leading up to the filing of this case is provided in the *DECLARATION OF LAWRENCE DOWNS IN SUPPORT OF THE DEBTOR'S PETITION AND FIRST DAY MOTIONS* submitted in support hereof (the "Downs Declaration"), which is incorporated by reference herein.

4. The Debtor is a self-funded multiple employer welfare arrangement under the provisions of N.J.S.A. 17B:27C-1, et seq.

5. As detailed in the Downs Declaration, pursuant to a Master Services Agreement (MSA-141890), and as same has been amended (the "Aetna MSA") Aetna serves as a third-party administrator for the Debtor. *Redacted copy attached as* **Exhibit "A."**

6. Pursuant to the Aetna MSA, Aetna handles medical and prescription claims administration, claims processing, processing of checks and other payments, benefit plan administration, and HIPAA administration.

7. Typically, pursuant to the Aetna MSA, Aetna processes and funds the self-insured medical and pharmacy claims on behalf of the Debtor, and the Debtor is obligated to promptly reimburse Aetna for such funding. Claims are often received, processed, and paid several weeks (or more) after the Debtor's member receives the underlying healthcare service, and thus

prepetition claims remain outstanding and unfunded as of the Petition Date. These prepetition claims are self-insured obligations of the Debtor.

8. The Debtor will be unable to operate without the services provided by Aetna under the MSA.

## REQUESTED RELIEF

9. By this Motion, the Debtor seeks authorization to (i) assume and fully perform under the Aetna MSA and (ii) fund Aetna's prepetition and postpetition funding requests on account of the Debtor's self-insured medical and prescription claim obligations incurred pre and postpetition.

## BASIS FOR GRANTING RELIEF REQUESTED

### *Assumption of Aetna MSA*

10. Section 365(a) authorizes a debtor, subject to court's approval, to assume an executory contract. 11 U.S.C. § 365(a).

11. In order to assume a contract, a debtor must cure any default and provide adequate assurance of future performance. See 11 U.S.C. §365(b)(1)(A) and (c).

12. Section 105(a) grants bankruptcy courts authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

### *Payment of Prepetition Funding Requests and Prepetition Medical and Prescription Claims*

13. The authorization of post-petition payments on pre-petition debt is generally permitted under 11 U.S.C. §§ 105 and 363, depending upon the jurisdiction. In re Lehigh & New England &. Co., 657 F.2d 570, 581 (3d Cir. 1981) (quoting In re Penn Central Transp. Co., 467 F.2d 100, 102, n.1 (3d Cir. 1972) (the "necessity of payment" doctrine [pursuant to § 105]

permits immediate payment of claims to creditors who will not supply services or material essential to the debtor's business until their pre-petition claims are paid); Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l), 2009 U.S. Dist. LEXIS 10024, 7, 2009 WL 330993 (D. Del. Feb. 10, 2009) (citing In re Lehigh & New England & Co.); J.M. Blanco, Inc. v. PMC Mktg. Corp., 2009 U.S. Dist. LEXIS 119063, 4-5, 2009 WL 5184458 (D.P.R. Dec. 22, 2009).  See also In re Berry Good, LLC, 400 B.R. 741, 746-747, 2008 Bankr. LEXIS 3582, 50 Bankr. Ct. Dec. 262 (Bankr. D. Ariz. 2008) (calling the post-petition payment of pre-petition debts, the "doctrine of necessity" or "critical vendor" theory; most circuit courts have held that the bankruptcy court does not have general equitable power under § 105(a) to overrule the Code's priority scheme by favoring one class of unsecured creditors over another, but references 363 as a possibility - just not under the circumstances of that case due to the lack of an appropriate record) (citing In re B & W Enterprises, Inc., 713 F.2d 534, 535, 1983 U.S. App. LEXIS 24704, Bankr. L. Rep. (CCH) P69,397, 9 Collier Bankr. Cas. 2d (MB) 302, 11 Bankr. Ct. Dec. 141 (9th Cir. Idaho 1983); In re KMart Corp., 359 F.3d 866, 871 (7th Cir. 2004); In re Oxford Mgmt. Inc., 4 F.3d 1329, 1333-34 (5th Cir. 1993); Official Committee of Equity Security Holders v. Mabey, 832 F.2d 299 (4th Cir. 1987)).

14. Courts that would allow such payments, under 105(a) or under 363, demand a stringent evidentiary test showing that the payment of the pre-petition claim is "critical to the debtor's reorganization." In re Just For Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999). For example, in KMart, the Seventh Circuit opinion discussed a requirement, for any critical vendor order, that there be evidence of a "prospect of benefit to the other [noncritical, disfavored] creditors." KMart, 359 F.3d at 874. One Bankruptcy Court

authorized critical vendor payments where the vendors were unique and it would take the debtor four to six weeks to replace them. See In re Tropical Sportswear Int'l Corp., 320 B.R. 15 (Bankr. M.D. Fla. 2005). Texas bankruptcy courts apply a three-part test: First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. In re CoServ, L.L.C., 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002).

15.    Courts applying the "Doctrine of Necessity", such as those in the Third Circuit, have been limited to general standards like "essential to the continued operation of the debtor," see In re Just for Feet, 242 B.R. at 825.; "facilitation of rehabilitation," In re Ionosphere Clubs, 98 B.R. 174, 175, 1989 Bankr. LEXIS 490, Bankr. L. Rep. (CCH) P72, 706, 19 Bankr. Ct. Dec. 149, 112 Lab. Cas. (CCH) P11, 293 (Bankr. S.D.N.Y. 1989); or "critical to reorganization." In re Financial News Network, Inc., 134 B.R. 732, 734, 1991 Bankr. LEXIS 1869, 26 Collier Bankr. Cas. 2d (MB) 788 (Bankr. S.D.N.Y. 1991).

16.    One recent "Doctrine of Necessity" case was not so general. In re Movie Gallery, Inc., 2010 Bankr. LEXIS 5819, 4-5 (Bankr. E.D. Va. Mar. 23, 2010) (pursuant to the doctrine of necessity, first, the Debtors must show that they cannot obtain essential goods without the payment of a pre-petition unsecured claim, and the vendor being paid is necessary for the successful reorganization of the Debtors; second, the remedy must be crafted to the circumstances of the case and be complete relief, in that there is an obligation on the part of the critical vendor to provide future goods to the Debtors which obligation is not terminable at

will; and third, the favorable treatment of the critical vendor must not prejudice other estate creditors).

17. The Debtor is not current under the Aetna MSA but has the resources to cure the defaults so that it may assume the Aetna MSA, as well as provide adequate assurance that it will be able to perform under the Aetna MSA. Any known monetary defaults under the Aetna MSA, including outstanding reimbursement obligations as of the date of this Motion in the amount in the amount of $3,122,423.97, will be cured within five (5) business days of entry of any order authorizing assumption of the Aetna MSA.

18. Aetna's performance under the Aetna MSA is essential to the continued operations of the Debtor, and the Debtor's ability to satisfy prepetition medical and pharmacy claims on behalf of members is critical to maintaining uninterrupted coverage for the Debtor's members.

19. Aetna has represented to the Debtor that if the Debtor does not obtain court authorization to pay the pre and postpetition funding requests (which relate to the Debtor's self-insured pre and postpetition medical and prescription claim obligations), Aetna is unable to fund the medical and prescription claims on the Debtor's behalf.

20. Without the ability to fund the Debtor's self-insured claim obligations, pharmacies and doctors' offices will have their requests for payment for services and prescriptions denied. In turn, they will demand direct payment from the individuals who expected coverage under their respective health plans.

21. Based upon the foregoing and the Debtor's business judgment, the Debtor respectfully submits that cause exists for this Court to enter an order authorizing the Debtor to (i) assume and fully perform under the Aetna MSA and (ii) fund Aetna's prepetition and postpetition

funding requests for payment of the Debtor's medical and prescription claim obligations incurred pre and postpetition.

## NOTICE

22. Notice of this Motion has been given to: (i) the top twenty (20) unsecured creditors of the Debtor; (ii) the United States Trustee and the Subchapter V Trustee; (iii) those persons who have formally appeared in these cases and requested service pursuant to Bankruptcy Rule 2002; (iv) Aetna; and (v) all applicable government agencies to the extent required by the Bankruptcy Rules and the local rules of this Court, including New Jersey Department of Banking and Insurance. The Debtor submits that no other or further notice of the Motion is necessary.

**WHEREFORE**, the Debtor respectfully requests the entry of an Order of this Court, authorizing the Debtor to assume the Aetna MSA and fund Aetna's prepetition and postpetition funding requests on account of the Debtor's self-insured medical and prescription claim obligations incurred pre and postpetition, together with such other and further relief as is just and equitable.

Respectfully submitted,

**GENOVA BURNS, LLC**
*Proposed Counsel to Affiliated Physicians and Employers Master Trust d/b/a Member Health Plan NJ*

By: */s/Donald W. Clarke*

Date:    June 3, 2021