**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)
**GENOVA BURNS LLC**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone: (973) 467-2700
Fax: (973) 467-8126
*Counsel to Affiliated Physicians and Employers Master Trust*
**DANIEL M. STOLZ, ESQ.**
**DONALD W. CLARKE, ESQ.**

In Re:

**AFFILIATED PHYSICIANS AND EMPLOYERS MASTER TRUST d/b/a MEMBERS HEALTH PLAN NJ,**

Debtor.

Chapter 11

Hon. Michael B. Kaplan

Case No. 21-14286(MBK)

*Status Conference:  November 18, 2021*
                                        *1:00 p.m.*

## SUBCHAPTER V STATUS REPORT

The Debtor filed its Chapter 11, Subchapter V Petition on May 24, 2021.  The Debtor has been certified and remains a Debtor-in-Possession.  On May 25, 2021, Brian W. Hofmeister, Esq. was appointed as Subchapter V Trustee by the Office of the United States Trustee.

As the Court is aware, at the time of the Chapter 11 filing, the Debtor provided health insurance coverage for a large number of employer/members and their employees.  The Debtor is a self-funded, multi-employer welfare arrangement ("MEWA"), pursuant to applicable law.  Aetna serves as the third party administrator for the Debtor, interacting with service providers and covered individuals.

Pursuant to agreement with The Department of Banking & Insurance ("DOBI"), the Debtor has written no new business since its Chapter 11 filing.  The Debtor had hoped to recapitalize itself and remain in business.  Upon notification from DOBI that the Debtor's registration as a MEWA

would not be renewed, the Debtor reluctantly concluded that it had no choice but to embark upon an orderly liquidation or wind down.

The wind down process has moved forward deliberately and productively. One of the immediate goals of the wind down was to assure that the covered individuals obtain substitute coverage in an expedited manner, so that the claims being presented to the Debtor for payment could come to an end. This effort has been successful, as virtually all of the covered individuals and member/employers have obtained coverage elsewhere. This will allow the Debtor to determine definitively the total amount of health claims which will need to be paid.

One of the other major goals of the wind down was to assure that Aetna would continue to serve as third party administrator throughout the wind down period. Without Aetna's continuing services, the discounts which providers had agreed to with Aetna would not be available and payment of medical health claims would be virtually impossible. In addition, pursuant to the agreements with Aetna, the Debtor was entitled to very large prescription rebates.

Fortunately, the Debtor and Aetna are documenting and finalizing an agreement, pursuant to which Aetna will continue to serve as the third party administrator through the conclusion of the wind down, and will apply the prescription rebates to payment of health claims outstanding. This comprehensive agreement with Aetna will be incorporated into a revised plan of orderly liquidation and also an amended temporary restraining order in the adversary proceeding initiated by the Debtor against Aetna (Adv. Pro. No.: 21-01366).

To fund the outstanding health claims, the Debtor was forced to impose an assessment on its member/employers, in accordance with the MEWA statute, the Master Trust Agreement, and the agreements executed by each member/employer. Pursuant to the MEWA statute, the

contingent liability of all member/employers was set forth in different color type in the agreement signed by each member/employer.

Before commencing suit against in excess of 4,000 member/employers, the Debtor and its professionals have endeavored to persuade member/employers to meet their contractual and statutory obligation to pay the assessment. Obviously, commencing suit against member/employers to collect the assessments would create substantial additional expense.

An extraordinary effort was undertaken to communicate with the member/employers both by mail and telephone to explain the liability of the member/employers and to make appropriate arrangements for the payment of such obligations. Where requested, the Debtor has provided promissory notes for execution by member/employers, so that payment of the assessment could be made over a relatively short period of time.

The Debtor's efforts to collect the assessments from its member/employers has been extremely successful. Through November 15, 2021, the Debtor has collected approximately $10 million of assessments. An additional $5.3 million of member/employer liability has been agreed to be paid over a period of time.

The Debtor recently commenced a suit against the Nissenbaum firm, who has been active, through counsel, in this Chapter 11 case. In that lawsuit, the Debtor seeks to collect the assessment due from the Nissenbaum law firm, as well as certain unpaid monthly premiums. The Debtor also is contemplating bringing adversary proceedings to seek collection of the largest unpaid assessments. Thereafter, the Debtor will seek out the most expeditious and economical way to pursue litigation to collect the smaller amounts due.

Since May 1, 2021, the Debtor has paid medical claims in the amount of $47,637,921.26 and prescription claims of $9,697,657.14. The total paid medical and prescription claims since May 1, 2021 is $57,335,578.40.

Since September 1, 2021, when the Debtor began collecting assessments from its member/employers, the Debtor has funded $7.9 million of medical claims, and $575,000.00 of prescription claims.

The Debtor currently has on hand approximately $5.7 million. All post-petition expenses are current.

Aetna has delivered to the Debtor the sum of $2,512,911.37, representing prescription rebates.

The Debtor will continue to use the funds on hand and the rebates received to pay medical and prescription claims, on a first in, first out basis.

The Debtor filed its Chapter 11 Subchapter V Plan on August 20, 2021. While the Bankruptcy Code contains no deadline for a Subchapter V Debtor to obtain confirmation of its Plan, the Debtor intends to proceed expeditiously to seek confirmation of its Plan. An Amended Plan will be filed, incorporating the agreement with Aetna and updating the information contained therein.

We will be happy to answer any questions by the Court during the status conference, currently scheduled for November 18, 2021.

Respectfully submitted,

**GENOVA BURNS, LLC**
**Counsel to the Debtor**

By: /s/ Daniel M. Stolz    .
DANIEL M. STOLZ

Dated: November 17, 2021